IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re                                           )   Chapter 11
                                                )
GARDEN RIDGE CORPORATION,                       )   Case No. 04-10324 (KJC)
et al.,                                         )
                                                )   Jointly Administered
            Debtors.                            )
---------------------------------------------------------------x
                                                )
PETER CHRISTIAN ROPER,                          )   Civil Action No. 06-555 (GMS)
                                                )   Civil Action No. 06-723 (GMS)
            Appellant,                          )
                                                )
   v.                                           )
                                                )
GARDEN RIDGE CORPORATION, et al.                )
                                                )
            Appellees.                          )
---------------------------------------------------------------x

**BRIEF IN SUPPORT OF MOTIONS OF APPELLEES GARDEN RIDGE CORPORATION, ET AL. (I) TO DISMISS APPEALS, AND (II) FOR AN AWARD OF DAMAGES PURSUANT TO APPELLATE RULE 38 AND BANKRUPTCY RULE 8020**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (Delaware Bar No. 3650)
Joseph M. Barry (Delaware Bar No. 4221)
Sean T. Greecher (Delaware Bar No. 4484)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Attorneys for the Debtors/Appellees

## TABLE OF CONTENTS

Page No.

I. NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II. SUMMARY OF THE ARGUMENT .............................................................................. 1

III. FACTS ............................................................................................................................ 2

    A. General Background ............................................................................................ 2
    B. The Bar Date ........................................................................................................ 3
    C. The Complaint and the Amended Schedules ...................................................... 3
    D. The Plan, Disclosure Statement, and Effective Date .......................................... 4
    E. The Claim ............................................................................................................. 6
    F. Roper's Motion for Reconsideration and First Notice of Appeal ........................ 7

IV. ARGUMENT ................................................................................................................... 9

    A. The Appeals are Frivolous, Malicious, and Sanctionable ................................... 9
    B. Alternatively, the Court Lacks Jurisdiction to Consider The Appeals Because Roper Has Failed to Comply With Bankruptcy Rule 8002 ................................ 12
    C. Alternatively, the Appeals must be dismissed because Roper Has Failed to Comply With Bankruptcy Rule 8006 .................................................................. 13

V. CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

Page No.

**Federal Cases**

*Anderson v. Steers, Sullivan, McNamar & Rogers*,
998 F.2d 495 (7th Cir. 1993),
*cert. denied*, 510 U.S. 1114 (1994) .................................................................................. 12

*Deutsch v. United States*,
67 F.3d 1080 (3d Cir. 1995) ................................................................................................ 10

*Huck ex rel. Sea Air Shuttle Corporation v. Dawson*,
106 F.3d 45 (3d Cir. 1997) ............................................................................................ 10, 12

*In re Comer*,
716 F.2d 168 (3d Cir. 1983) ................................................................................................ 13

*In re Competrol Acquisition Partnership, L.P.*,
176 B.R. 723 (Bankr. D. Del. 1994) ..................................................................................... 3

*In re Montgomery Ward, LLC*,
292 B.R. 49 (Bankr. D. Del. 2003) ....................................................................................... 3

*In re Siciliano*,
13 F.3d 748 (3d Cir. 1994) .................................................................................................... 3

*In re Universal Minerals*,
755 F.2d 309 (3d Cir. 1985) ................................................................................................ 12

*Jungle Democracy v. United States*,
Civ. No. 06-503,
2006 U.S. Dist. LEXIS 65313 (D. Del. September 12, 2006) ............................................. 11

*Kuntz v. Saul, Ewing, et al.*,
200 B.R. 101 (D. Del. 1996) ................................................................................................ 12

*In re Magic Restaurants, Inc.*,
Civ. No. 97-300,
1997 U.S. Dist. LEXIS 23681 (D. Del. 1997) ..................................................................... 13

*Nagle v. Alspach*,
8 F.3d 141 (3d Cir. 1993) .............................................................................................. 10, 12

*Neitzke v. Wiliams*,
490 U.S. 319 (1989) .............................................................................................................. 10

*PDM Enterprises, Inc. v. Cape May Foods, Inc.*,
    301 F.3d 147 (3d Cir. 2002) .................................................................................................. 12

*Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*,
    507 U.S. 380 (1993) .............................................................................................................. 14

*Pittman v. Moore*,
    980 F.2d 994 (5th Cir. 1993) ................................................................................................ 10

*Quiroga v. Hasbro, Inc.*,
    943 F.2d 346 (3d Cir. 1991) ................................................................................................. 10

*Roper v. Jo-Ann Stores*,
    Case No. CV 04-9654 (C.D. Ca.) ......................................................................................... 11

*Stelly v. Commissioner of Internal Revenue*,
    761 F.2d 1113 (5th Cir. 1985) .............................................................................................. 12

## Statutes

28 U.S.C. § 1915 ................................................................................................................ 10, 11, 14

## Rules

Fed. R. Bank. P. 2002(g)(1)(A) ...................................................................................................... 7

Fed. R. Bank. P. 3001(c) ................................................................................................................ 7

Fed. R. Bank P. 8001(a) .............................................................................................................. 13

Fed. R. Bank. P. 8002 ........................................................................................................ 1, 12, 13

Fed. R. Bank. P. 8006 ............................................................................................................. 1, 13

Fed. R. Bank. P. 8020 .................................................................................................................. 14

Fed. R. Bankr. P. 8002(a) ............................................................................................................ 12

DB01:2260592.1                                                                                                                                          062883.1001

I.  **NATURE AND STAGE OF PROCEEDINGS**

The above-captioned appeals (the "Appeals") were taken by Peter Christian Roper ("Roper") from (i) an order entered by the Honorable Kevin J. Carey of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on February 17, 2006 [D.I. 2083][1] (the "Order") that, among other things, disallowed and expunged the proof of claim filed by Roper (the "Claim") filed against Garden Ridge Investments, one of the debtors in the above captioned bankruptcy proceeding pending before the Bankruptcy Court (collectively, the "Debtors" or the "Appellees");[2] and (ii) an order entered by the Bankruptcy Court on August 31, 2006, denying both the Reconsideration Motion and the IFP Motion (as such terms are defined herein) (the "Reconsideration Order," and together with the Order, the "Orders").

No designations of the record or statements of issues presented for these Appeals have been filed by Roper. For the reasons set forth below, the Appellees seek entry of an order dismissing the Appeals (i) on the basis that they are simply frivolous and malicious, as the Appeals fail to make any cognizable claim against the Debtors; or in the alternative, (ii) based on Roper's failure to prosecute the Appeals and comply with Rules 8002 and 8006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

II.  **SUMMARY OF THE ARGUMENT**

The Appeals before this Court arise out of a series of equally rambling, incoherent, and inflammatory diatribes asserted by Roper against the Debtors. Not only does Roper fail to make any intelligible assertion of liability against the Appellees, but he has (i) failed to supplement his claims with any tangible, sensible assertion of liability, after being given numerous opportunities

---

[1] References to docket entries relate to the docket in the bankruptcy case below, and will be referred to as [D.I. ____].
[2] The Debtors are Garden Ridge Corporation ("GR Corporation"), Garden Ridge Investments, Inc. ("GR Investments"), Garden Ridge Management, Inc. ("GR Management"), Garden Ridge Finance Corporation ("GR Finance"), Garden Ridge, L.P. ("GR L.P."), and Garden Holdings, Inc. ("Holdings").

1

by the Bankruptcy Court to do so, and (ii) failed to make even a minimal effort to comply with the Bankruptcy Rules in prosecuting his Appeals. As the Debtors seek to bring their bankruptcy cases to a conclusion, and to make distributions to the thousands of legitimate claimants against the Debtors' bankruptcy estates, it is both unfair to the Debtors to shoulder the costs of litigating such frivolous appeals, as well as unfair to require the legitimate creditors of the Debtors to stand by while Roper's Appeals remain pending, appeals that Roper has failed to prosecute in any intelligible manner. Accordingly, because of the dearth of any substantive merit and consideration to procedural aspects of the Appeals, dismissal of the Appeals with prejudice is warranted.

### III. FACTS

#### A. General Background

The Debtors own and operate Garden Ridge, a leading home décor retailer with approximately 36 stores in 13 states throughout the South, Midwest and Mid Atlantic regions. On February 2, 2004 (the "Petition Date"), each of GR Corporation, GR Investments, GR Management, GR Finance, and GR L.P. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On February 4, 2004, Holdings filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

On February 3, 2004, the Bankruptcy Court entered an order appointing The Altman Group, Inc. ("Altman") as claims agent in these cases. Altman is authorized to maintain all proofs of claim filed against the Debtors' estates and to docket all proofs of claim on an official claims register that includes, among other things, the name and address of each claimant, the date each claim was received, the number assigned to the claim and the amount and classification of the claim.

### B. The Bar Date

On March 1, 2004, this Court entered an order (the "Bar Date Order") [see D.I. 200][3] establishing April 19, 2004 as the general bar date (the "General Bar Date") for filing proofs of claim. The Bar Date Order provides, in pertinent part, that

> any entity that is required to file a proof of claim...but that fails to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the Debtors that the entity has that (i) is in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification than any claim identified in the Schedules on behalf of such entity (any such claim being referred to herein as an "Unscheduled Claim"); or (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim.

Bar Date Order, at ¶ 12. In accordance with the Bar Date Order, notice of the General Bar Date was published on March 11, 2004 in the national editions of *USA Today* and *The Wall Street Journal*. See Affidavits of Publication, D.I. 296 & 297.[4]

### C. The Complaint and the Amended Schedules

On or about January 7, 2005 – nearly a year after the Petition Date – Roper filed a complaint (the "Complaint") in the United States District Court for the Central District of California against one or more of the Debtors (the "Action").[5] Up until that point, not only had the Debtors never done business with Roper, the management (and presumably staff) at Garden

---

[3] A copy of the Bar Date Order is included in an appendix of documents submitted contemporaneously herewith (the "Appendix") as Exhibit A.

[4] The Bar Date Order required the Debtors to serve notice of the General Bar Date only on "all known entities holding potential prepetition claims..." Bar Date Order, at ¶ 13. Roper was an unknown creditor and, therefore, pursuant to applicable case law and the express terms of the Bar Date Order, the Debtors were not required to provide him with actual notice.

[5] Absent court order annulling the automatic stay, the Action is void *ab initio*. *See, e.g., In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994); *In re Competrol Acquisition Partnership, L.P.*, 176 B.R. 723, 729 (Bankr. D. Del. 1994) ("In this Circuit, acts in violation of the automatic stay have no force or effect and can accord the party who has violated the automatic stay no additional property rights or interests that it did not enjoy prior to the commencement of the bankruptcy case."); *In re Montgomery Ward, LLC*, 292 B.R. 49, 57 (Bankr. D. Del. 2003) ("Absent stay relief, any such judicial proceedings are void *ab initio*").

3

Ridge had never heard of Roper.[6] Though entirely unclear, in the Complaint, Roper appears to assert that the Debtors infringed upon his patent and trademark rights through the sale of certain of their products which (presumably) have some alleged relation to the patent that Roper contends he holds.

After receiving a copy of the Complaint, on or about February 23, 2005, the Debtors reviewed their books and records, as well as the documents that comprised the Complaint. Unable to discern what potential liability Roper asserted the Debtors owed him, and unaware of his assertions until the Complaint was filed, the Debtors filed a *Notice of Amendment to Schedules of Assets and Liabilities of Garden Ridge Corporation* (the "Amended Schedules") [*see* D.I. 1352].[7] The Amended Schedules listed the claims asserted by Roper in the Complaint as "contingent, unliquidated and disputed" and in the amount of $0.00.[8]

The Debtors included Roper in the Amended Schedules to ensure that Roper was provided notice of the Debtors' bankruptcy proceedings, and to grant Roper an additional opportunity to file a proof of claim against the Debtors, so that Roper's alleged claim could be resolved and extinguished in the bankruptcy proceedings. In accordance with Local Rule 1009-2 The Amended Schedules provided notice to Roper that he had an additional 20 days until March 14, 2005 (the "Amended Schedules Bar Date") to file a claim against these estates. As evidenced by the Affidavit of Service filed on February 23, 2005 [*see* D.I. 1364], the Amended Schedules were served on Roper at the address set forth in the Complaint.

D.  **The Plan, Disclosure Statement, and Effective Date**

On March 29, 2005, approximately two weeks after the Amended Schedules Bar Date,

---

[6] *See Affidavit of Holly Shafer* (the "Shafer Affidavit"), which was submitted to the Bankruptcy Court in the context of the Reconsideration Motion (as defined herein), and is included as Exhibit H to the Appendix.
[7] The Amended Schedules are included as Exhibit B to the Appendix.
[8] *See Shafer Affidavit*.

4

the Debtors filed their *First Amended Joint Plan of Reorganization (Corrected) Under Chapter 11 of the Bankruptcy Code* [D.I. 1467] (the "Plan"), as well as an accompanying disclosure statement [D.I. 1465] (the "Disclosure Statement"). The Disclosure Statement, which is the document that informed creditors of the expected amount of claims against the Debtors and provided an estimate of the recoveries available to the various creditor classes, stated that there were no outstanding non-tax claims entitled to priority treatment under the Bankruptcy Code. Further, the Disclosure Statement provided creditors with an estimate that the Debtors' total non-priority, general unsecured claims exposure ranged from $52,044,000 to $62,044,000. Based on the Amended Schedules, this range did not include any estimated liability to Roper. The Plan provides for the payment in full of all non-tax priority claims in cash and a *pro rata* distribution of shares of stock to general unsecured creditors. All classes of creditors entitled to vote on the Plan voted to accept the Debtors' Plan (*see* D.I. 1586), and on April 28, 2005, the Court entered an order confirming the Plan (the "Confirmation Order") [D.I. 1598]. The effective date of the Plan was May 12, 2005 (the "Effective Date").

Although Roper was served with notice of the hearing to consider the Disclosure Statement (the "Disclosure Statement Notice"),[9] Roper still had not filed a claim at this time – nearly ten months after the General Bar Date. To the extent that the Debtors accounted for any claim owed to Roper in the Disclosure Statement estimates, it would have been at $0.00 as set forth in the Amended Schedules.

The Plan provides, in relevant part, as follows:

> Except as otherwise expressly specified in the Plan, the Confirmation Order shall act as of the Effective Date as a discharge of all debts of, Claims against, and Liens on the Debtors, their respective assets and properties, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of

---

[9] *See Affidavit of Service of Kenneth L. Altman*, dated February 23, 2005, D.I. 1367.

> Claim with respect thereto was filed, whether the Claim is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution hereunder. Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.

Plan, Art. VIII.D, at p. 35.

The Confirmation Order states, in relevant part:

> <u>Injunction</u>. Except as otherwise expressly provided in the Plan, this Confirmation Order, or any other Order of this Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or the Reorganized Debtors on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Reorganized Debtors or against the property or interest in property of the Debtors on account of any such Claim and (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors on account of any such Claim. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property, . . .

Confirmation Order, at 16; *see also* Plan, at Art. VIII(E), at p. 35 (nearly identical provision).

Thus, as of the May 12, 2005 Effective Date, not only was the Action void *ab initio* by virtue of the automatic stay, but any claim held by Roper had been <u>discharged</u> and he was permanently <u>enjoined</u> from prosecuting the Action.

### E. The Claim

On May 19, 2005, more than a year after the General Bar Date, approximately three months after receiving the Disclosure Statement Notice, more than two months after the

6

Amended Schedules Bar Date and a week after the Effective Date of the Plan, Roper filed proof of claim number 1525 (the "Claim"), which appears to be asserted as an unsecured priority claim in the amount of $10 million and an unsecured, non-priority claim in the amount of $4 billion.[10]

On January 18, 2006, the Debtors filed their *Eighth Omnibus Objection to Claims* (the "Objection") [D.I. 2044],[11] which sought to disallow and expunge the Claim on two bases: that it was improperly filed after the relevant bar date and that it provided no supporting documentation, in contravention of Bankruptcy Rule 3001(c).

The Objection was served on Roper at the address he provided on the Claim, consistent with Bankruptcy Rule 2002(g)(1)(A).[12] No response to the Objection was received.[13] On February 17, 2006, this Court entered an order sustaining the Objection, disallowing and expunging the Claim [D.I. 2083] (the "Order").[14]

### F. Roper's Motion for Reconsideration and First Notice of Appeal

One month later, on or about March 20, 2006, Roper filed a motion for reconsideration of the Order [D.I. 2117] (the "Reconsideration Motion"), a notice of appeal of the Order [D.I. 2118] (the "First Notice of Appeal"),[15] and a motion for leave to proceed with the appeal of the Order, which appeal is pending before this court as case number 06-cv-555 (GMS) (the "First Appeal")

---

[10] A copy of the Claim is included in the Appendix as Exhibit C On May 23, 2005, Roper also filed a *Motion for Order in Section 546(c) of the Bankruptcy Code for Priority Claim or Lien in section 503(b)* [D.I. 1657]. That motion was never properly noticed or served and, therefore, was never adjudicated.
[11] The Objection is included in the Appendix as Exhibit D.
[12] See *Affidavit of Service*, dated January 20, 2006, D.I. 2046.
[13] After receipt of a forwarding address from the United States Postal Service (which occurred after the entry of the Order), the Debtors served Roper at the forwarding address provided by the Postal Service, which he never provided to the Debtors. Regardless, as set forth in greater detail herein, any issues with the service of the Objection notwithstanding, Roper makes no howing to excuse the lateness of the filing of his Claim in the Appeals. Accordingly, the Debtors submit that (i) service of the Objection was appropriate under the Federal Rules of Bankruptcy Procedure, and (ii) no substantive basis exists to support the Appeals. Indeed, the Debtors have found themselves "chasing" Roper throughout these proceedings, as he has changed addresses no less than three times, never once providing notice to the Debtors, the Bankruptcy Court, or this Court of where he should be served with pleadings.
[14] A copy of the Order and its exhibits is included in the Appendix as Exhibit E.
[15] The Reconsideration Motion and First Notice of Appeal Exhibits F and G to the Appendix.

*in forma pauperis* [D.I. 2119] (the "IFP Motion"). The Debtors filed an opposition to the Reconsideration Motion on April 7, 2006 [D.I. 2132] (the "Reconsideration Opposition"), and left Roper to his burdens to demonstrate that he was entitled to proceed *in forma pauperis*.

The Bankruptcy Court heard oral argument on the Reconsideration Motion and the IFP Motion on April 11, 2006 (the "First Hearing"). At the First Hearing, the Bankruptcy Court orally ruled that in order for Mr. Roper to meet the burden of proof required to grant the Reconsideration Motion and the IFP Motion, an evidentiary hearing was necessary. Additionally, the Bankruptcy Court ruled that unless Mr. Roper personally appeared to present evidence in support of his burden of proof, the Reconsideration Motion and the IFP Motion would be denied. The Bankruptcy Court subsequently issued an order [D.I. 2144], compelling the parties to (i) appear personally at a subsequent evidentiary hearing on both motions, scheduled for July 18, 2006 (the "Second Hearing"), and (ii) exchange any documents either party intended to use at such hearing no later than seven days prior to the scheduled hearing.

Prior to the Second Hearing, Roper requested an adjournment so he could have an opportunity to obtain counsel, to which the Debtors did not object as a courtesy to Roper. Accordingly, on July 17, 2006, the Court entered an order (i) rescheduling the evidentiary hearing for August 31, 2006 (the "Third Hearing"), (ii) reiterating the Court's intent to deny the Reconsideration Motion and IFP Motion if Roper failed to appear, and (iii) denying Roper's request for a jury trial [D.I. 2240].

Immediately before the Third Hearing, Roper submitted a further request for continuance on the basis that (i) he was unable to appear, (ii) he had not obtained legal representation, and (iii) the Bankruptcy Court had discriminated against him. The Debtors objected to this further request to adjourn the Third Hearing on the basis that Roper's failure to heed the Bankruptcy Court's warnings and prosecute the Reconsideration Motion and IFP Motion should not further

8

hold up the resolution of the bankruptcy cases. Further, the Debtors noted that they are attempting to complete the claims reconciliation process and finalize the distribution register in these cases. Delaying the final disposition of Roper's Claim – a $10 million unsecured priority claim and $4 billion general unsecured claim – would only serve not only the claims reconciliation process but a distribution to creditors and closure of the bankruptcy cases. The Bankruptcy Court issued an order denying Roper's motion to continue the Third Hearing [D.I. 2290].

Roper failed to appear at the Third Hearing to present any evidence in support of the Reconsideration Motion or the IFP Motion. Accordingly, the Bankruptcy Court entered the Reconsideration Order.[16] On or about September 11, 2006, Roper filed a notice of appeal from the Reconsideration Order [D.I. 2302] (the "Second Notice of Appeal,"[17] and together with the First Notice of Appeal, the "Notices of Appeal"), which appeal is pending before this court as case number 06-cv-723 (GMS) (the "Reconsideration Appeal," and together with the First Appeal, the "Appeals"). The Debtors have filed a motion to dismiss the Reconsideration Appeal on the same grounds as set forth herein.

## IV.   ARGUMENT

### A.   The Appeals are Frivolous, Malicious, and Sanctionable

The Debtors submit that the Appeals should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and malicious. "An appeal is frivolous if it is wholly without merit." *Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991) (citation omitted). If the action "lacks an arguable basis either in law or in fact," *Neitzke v. Wiliams*, 490 U.S. 319, 325 (1989), or if the

---

[16] The Reconsideration Order is included in the Appendix as Exhibit I. Subsequent to the entry of the Bankruptcy Court's order denying the Reconsideration Motion and the IFP Motion, Roper did submit evidence relevant to the IFP Motion [D.I. 2303], and the Bankruptcy Court granted the IFP Motion as uncontested [D.I. 2372].

[17] The Second Notice of Appeal is included in the Appendix as Exhibit J.

assertions "are of little or no weight, value, or importance, not worthy of serious consideration, or trivial," *Deutsch v. United States*, 67 F.3d 1080, 1083 (3d Cir. 1995), such action must be deemed frivolous. A court must apply this standard objectively in determining whether an appeal is frivolous. *See Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (citation omitted).

Circumstances where an appeal is found to be wholly without merit include where a litigant's claims were determined to be frivolous by the lower court in the first instance and where only unsupportable legal and factual conclusions that were found to be "patently wrong" and "st[ood] logic on its head" were offered on appeal (*see, e.g., Huck ex rel. Sea Air Shuttle Corporation v. Dawson*, 106 F.3d 45, 52 (3d Cir. 1997)), or circumstances where the "appeal appeared to have been doomed to failure from the moment the plaintiff-appellants' brief was filed..." *Nagle v. Alspach*, 8 F.3d 141, 144 (3d Cir. 1993). Actions are considered malicious when they "duplicate[] allegations of another pending federal lawsuit by the same plaintiff." *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993).

Because the Appeals are simply frivolous and malicious in nature, they must be dismissed. The statute providing the right of litigants to proceed *in forma pauperis*, 28 U.S.C. § 1915, provides that:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal--
>   (i) is frivolous or malicious;
>   (ii) fails to state a claim on which relief may be granted; or
>   (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915. The Appeals here are quite similar to the action reviewed and dismissed by this Court on the same basis in *Jungle Democracy v. United States*, Civ. No. 06-503, 2006 U.S. Dist. LEXIS 65313 (D. Del. September 12, 2006). As in *Jungle Democracy*, Roper proceeds

10

before this Court *in forma pauperis*. His pleadings, as those in *Jungle Democracy*, appear to be a "cut and paste" of other lawsuits filed by Roper and contain many handwritten, scribbled notes in the margins. Indeed, Roper's claims (and it would appear, many of the documents) are the claims asserted in *Roper v. Jo-Ann Stores*, Case No. CV 04-9654 (C.D. Ca.), which is currently before the Federal Circuit at Case No. 04-CV-09654 (Fed. Cir.).[18]

The pleadings amount to nothing more than rambling, unintelligible discourse and, among other things, interpose vague, unsubstantiated reference to alleged racial discrimination on the part of the Debtors and the Bankruptcy Court among discussion of the Debtors' alleged infringement of a number of patents. Further, at every turn during this litigation, the Bankruptcy Court provided Roper with abundant opportunities to present cogent evidence that the Debtors had in any way infringed upon his patent rights; at each turn, Roper has failed to do so.

Roper's claims on appeal are incomprehensible, entirely without merit and are doomed to fail since, as discussed above, not a scintilla of evidence appears to demonstrate any liability owed to Roper on the part of the Debtors. There is simply no cognizable legal basis under which the appellants' claims can prevail on appeal. Thus, Roper's claims are entirely without merit and frivolous, and the Appeals must be dismissed with prejudice.

Further, an award of damages under F.R.A.P. 38 or Bankruptcy Rule 8020 is appropriate here, where an appeal is frivolous. *See PDM Enterprises, Inc. v. Cape May Foods, Inc.*, 301 F.3d 147 (3d Cir. 2002); *Huck ex rel. Sea Air Shuttle Corporation v. Dawson*, 106 F.3d 45; *Nagle v. Alspach*, 8 F.3d 141. That Roper is a *pro se* litigant does not shield him from liability for filing a frivolous appeal. *See Kuntz v. Saul, Ewing, et al.*, 200 B.R. 101, 107 (D. Del. 1996)

---

[18] Copies of pleadings filed by Roper in *Roper v. Jo-Ann Stores* are included in the Appendix as Exhibit K. Note that these pleadings are identical to the pleadings filed in the Debtors' bankruptcy cases; In filing the Reconsideration Motion and Notices of Appeal in the Debtors' bankruptcy cases, Roper has merely redacted "Jo-Ann Stores" from the pleadings, inserted the Debtors' names, and included certain marginalia.

11

("a litigant's *pro se* status does not shield him or her from sanctions for filing a frivolous appeal"), *citing Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994); *Stelly v. Commissioner of Internal Revenue*, 761 F.2d 1113, 1116 (5th Cir. 1985).

Accordingly, the Debtors respectfully request that this Court grant damages in an amount to be determined by separate application, but in an amount no less than double the Debtors' reasonable costs, including attorneys' fees and costs, incurred with respect to these Appeals.

### B. Alternatively, the Court Lacks Jurisdiction to Consider The Appeals Because Roper Has Failed to Comply With Bankruptcy Rule 8002

Bankruptcy Rule 8002(a) provides that the notice of appeal must be filed within ten (10) days of the date of entry of the judgment that is appealed from. Fed. R. Bankr. P. 8002(a). Failure to timely file a notice of appeal is not merely a procedural defect; rather, failing to file such a notice of appeal effectively strips the district court of jurisdiction to consider the appeal. *In re Universal Minerals*, 755 F.2d 309 (3d Cir. 1985). Specifically, the Universal Minerals Court found that "[f]ailure to file a timely notice of appeal thus deprives the district court of jurisdiction to review the bankruptcy court's order or judgment" Id. at 312. While an appellant is entitles to seek an extension of the time periods proscribed in Bankruptcy Rule 8002, such a request for extension must be made within thirty (30) days from the date of the order or judgment. Id. See also, Bankruptcy Rule 8002(c).

Roper has failed to comply with even the most basic requirements for prosecution of an appeal of the Order or the Reconsideration Order. First, Roper did not file the First Notice of Appeal until on or about March 20, 2006—over one month after the Order disallowing his Claim was entered and became final. Roper did not file the Second Notice of Appeal until September 11, 2006, which was eleven days after the Reconsideration Order was entered.

Further, Roper also did not seek an extension to file the Notices of Appeal within the

thirty day period proscribed in Bankruptcy Rule 8002(c). In light of these deficiencies, this Court lacks jurisdiction to consider an appeal of the Orders and the Appeals must be dismissed.

### C. Alternatively, the Appeals must be dismissed because Roper Has Failed to Comply With Bankruptcy Rule 8006

Bankruptcy Rule 8006 provides that "[w]ithin 10 days after filing the notice of appeal as provided by Rule 8001(a) . . . the appellant shall file and serve with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." Fed. R. Bankr. P. 8006. Pursuant to Bankruptcy Rule 8001(a), failure of an appellant to timely designate the items to be included in the record on appeal and a statement of the issues to be presented gives the district court discretion "for such action as the District Court . . . deems appropriate, which may include dismissal of the appeal." Fed. R. Bankr. P. 8001(a). In determining whether to dismiss an appeal for the lack of prosecution based on late or missing designations required by Bankruptcy Rule 8006, the Court of Appeals for the Third Circuit has considered whether there exists bad faith on the part of the appellant or prejudice to the other party. See *In re Comer*, 716 F.2d 168, 177 (3d Cir. 1983); *In re Magic Restaurants, Inc.*, Civ. No. 97-300, 1997 U.S. Dist. LEXIS 23681, at *4 (D. Del. 1997) (stating that courts dismiss actions under Bankruptcy Rule 8001(a) where there is evidence of bad faith or prejudice).

As indicated above, while the Court may choose to give a degree of latitude to Roper since he is proceeding *pro se*, Roper's unintelligible pleadings in this case, and his failure to present any evidence that would lend any clarity or support to his allegations, demonstrate his bad faith. Further, his failure to prosecute the Appeals and comply with the appellate rules only serves to delay the Debtors' ability to fully administer their bankruptcy cases and make distributions to the legitimate creditors of the Debtors' estates. Roper has not made a good faith effort to comply with the rules applicable to the perfecting of appeals from the Orders, and the

13

Debtors have been prejudiced by the fact that it cannot possibly respond to Appeals where no issues are framed and no record is defined. Roper's failure to comply with court orders, notices, and other directives to participate in the prosecution of his Claim and the Reconsideration Motion was precisely the reason why the Bankruptcy Court entered the Orders.[19] Accordingly, the Court must dismiss the Appeals.

## V.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that this Court enter an order (i) dismissing the Appeals, (ii) determining that the Appeals are frivolous and malicious within the meaning of 28 U.S.C. § 1915(e)(2)(B), Bankruptcy Rule 8020, and F.R.A.P. 38, (iii) awarding the Debtors just damages and double costs, and (iv) granting such other and further relief as this Court deems necessary and proper under the circumstances.

Dated: December 29, 2006
       Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Pauline K. Morgan (Delaware Bar No. 3650)
Joseph M. Barry (Delaware Bar No. 4221)
Sean T. Greecher (Delaware Bar No. 4484)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

Attorneys for the Debtors/Appellees

---

[19] Indeed, Roper failed to present the Bankruptcy Court with any cogent evidence as to (i) why he should have been granted relief from the Bar Date Order and his Claim, which was filed after the General Bar Date Amended Schedules Bar Date; (ii) why or how he can make a showing of excusable neglect in failing to comply with the bar dates pursuant to the standards set forth in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993); and (iii) why or how Roper believes that the Debtors have infringed upon any substantive right that gives rise to a cognizable claim. This failure to muster any cogent evidence is <u>precisely</u> why the Reconsideration Motion was denied. Since Roper failed to present any evidence to the Bankruptcy Court on these points, which would appear to be the only legal bases on which the Orders could conceivably be reversed, the Appeals cannot succeed on a record devoid of any facts probative of these issues, and must be dismissed.

## CERTIFICATE OF SERVICE

      I, Sean T. Greecher, Esquire, hereby certify that I am not less than 18 years of age and that on December 29, 2006, I caused a copy of the attached document to be served on the following parties by Federal Express or Hand Delivery, as indicated:

**VIA FEDERAL EXPRESS**

Peter Christian Roper, pro se
1356 21st St.
Douglas, AZ 85607

                                      Sean T. Greecher (Delaware Bar No. 4484)

Dated: December 29, 2006